# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| JAMES WHITMAN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CV418-101 |
| | ) | |
| BRYAN KEITH HINTON, | ) | |
| | ) | |
|     Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

The presiding District Judge granted plaintiff James Whitman's Motion for Default Judgment against defendant Bryan Keith Hinton. Doc. 9. Because the damages Whitman incurred as a result of the conduct alleged in the Complaint were not for a sum certain, the undersigned held a hearing to determine the appropriate amount of those damages. *See* doc. 24. Based on the evidence presented at that hearing, the Court should enter judgment as follows.

The factual background of Whitman's claim is succinctly stated in the District Judge's Order granting Plaintiff's Motion for Default Judgment.  As the District Judge explained:

> Plaintiff alleges that Defendant used excessive force against him on May 31, 2017, while Plaintiff was incarcerated at Smith State Prison and Defendant was employed by the Georgia Department of Corrections as a correctional officer at the prison.  (Doc. 1, p. 2.)  Specifically, Plaintiff contends that Defendant "grabbed [Plaintiff's] arm, twisted it behind his back in a painful manner, and shoved him against a wall."  (Id.)  Plaintiff then alleges that after Plaintiff complied with another officer's order to lie on the ground, Defendant punched and kicked Plaintiff in his face, head, back, and legs.  (Id.)  Plaintiff states that, at the time of the attack, he was "neither violent nor posing [a] threat or risk of harm to himself, the officers, or any other person" and that he was "not refusing a lawful order."  (Id. at p. 3.)  Plaintiff contends that Defendant's use of excessive force violated Plaintiff's rights "under the Eighth and Fourteenth Amendments to the United States Constitution."  (Id.)  He further alleges that Defendant "is personally liable for his unconstitutional actions pursuant to 42 U.S.C. § 1983, because he was acting under color of state law."  (Id. at p. 4.)

Doc. 9 at 1-2.

## I. Requirements for Default Judgment

In all cases where the claim is not "for a sum certain or that can be made certain by computation," a party must seek a judgment from the court.  *See* Fed. R. Civ. P. 55(b)(1)-(2).  As the Court of Appeals for the Eleventh Circuit has explained, "a defaulted defendant is deemed to admit

the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (internal quotation marks and alterations omitted) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Because only well-pleaded factual allegations are deemed admitted, "before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

> This Court has previously made clear that:

> Federal Rule of Civil Procedure 55(b) governs the Court's ability to grant a default judgment and vests the court with discretion to determine whether it should enter judgment. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).  "[A] Defendant's default does not in itself warrant the court in entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered.' [*Nishimatsu Constr. Co*., 515 F.2d at 1206].  . . . Three distinct matters are essential for the entry of default judgment: (1) jurisdiction; (2) liability; and (3) damages. *Pitts*, 321 F. Supp. 2d at 1356.

*Am. Contractors Indem. Co. v. Energy Smart Insulation Co., Inc.*, 2016 WL 3395546, at * 1 (S.D. Ga. June 15, 2016); *see also Laufer v. Rudra Sai,*

*LLC*, 2021 WL 261674, at * 1 (S.D. Ga. Jan. 26, 2021) ("Under Federal Rule of Civil Procedure 55(b), a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled." (internal quotation marks and citation omitted)).

## II. Jurisdiction

The record in this case establishes that the Court has both subject matter jurisdiction over Whitman's claim and personal jurisdiction over Hinton.  Since, as the District Judge explained, Whitman's claim arises under federal law, *i.e.* 42 U.S.C. § 1983, *see* doc. 9 at 4-5, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.  As to personal jurisdiction over the absent defendant; "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  The record reflects that Hinton is subject to general jurisdiction in Georgia. *See, e.g.,* doc. 4-1 at 3 (affidavit of service reflecting that Hinton was served in Richmond Hill, Georgia with a home address in Richmond Hill).

4

Accordingly, the Court should find that it has both subject-matter and personal jurisdiction.

## III.   Liability

The District Judge has previously explained that Whitman's Complaint establishes Hinton's liability for violation of his Eighth Amendment rights. *See* doc. 9 at 4-5.  As the District Judge explained,

> Defendant's punches and kicks to Plaintiff's head, face, back and legs was sufficiently serious conduct to meet the objective component of an Eighth Amendment violation.  Furthermore, the well-pleaded and admitted allegations of Plaintiff's Complaint satisfy the subjective component of an Eighth Amendment claim. Defendant physically attacked Plaintiff even though there was no need for any use of force against Plaintiff at all.  Plaintiff was lying on the ground as directed by other officers, not disobeying any orders, and not posing a threat or risk to any officers, inmates, or other persons.  (Doc. 1, pp. 2–3.)  Consequently, the force Defendant applied grossly outweighed the non-existent need for force.  See Bowden v. Stokely, 576 F. App'x 951, 954 (11th Cir. 2014) (plaintiff's account that he was "the victim of an unprovoked attack in circumstances that did not present a risk of creating a disturbance or harming staff or other inmates" supports an Eighth Amendment excessive force claim even absent serious injuries).  Further, the attack caused Plaintiff to suffer "physical and psychological injuries from which he is still recovering." (Doc. 1, p. 3.)  Finally, Defendant was acting under color of state law at the time of the attack as he was working as a correctional officer for the Georgia Department of Corrections. (Id. at p. 2.)  For all of these reasons, Plaintiff has established that Defendant violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

Doc. 9 at 5.

## IV.    Damages

Even though the Complaint states a cause of action, a defaulted defendant is not deemed to admit the amount of damages claimed. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). In the absence of adequate factual basis in the record, the Court must hold a hearing to determine damages. *See Adolf Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded [on a default judgment] only if the record adequately reflects a basis for the award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." (internal quotation marks and citation omitted)); *see also Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 ("[A] plaintiff must . . . establish that the amount [of damages] is reasonable under the circumstances[, and] . . . the Court can take evidence when necessary, or compute them from the facts of record.").

Generally, the measure of damages in a § 1983 action is determined "according to principles derived from the common law of torts." *Memphis*

6

*Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986).  The Eleventh

Circuit has explained:

> Section 1983 "creates a species of torts liability," and damages are
> determined by compensation principles of common-law tort.  *Heck
> v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383
> (1994); *Memphis Community School District v. Stachura,* 477
> U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Wright v.
> Sheppard,* 919 F.2d 665, 669 (11th Cir.1990).  While defendants
> in § 1983 cases "are, as in common law tort disputes, responsible
> for the natural and foreseeable consequences of their actions," the
> § 1983 plaintiff must show causation.  *Jackson v. Sauls,* 206 F.3d
> 1156, 1168 (11th Cir. 2000).  Causation has two required
> elements: cause-in-fact and legal or proximate cause.  *Id.* at 1168
> n. 16.  To show that the constitutional tort was a cause-in-fact of
> the injuries and damages claimed, the plaintiff must show that
> "except for the constitutional tort, such injuries and damages
> would not have occurred."  *Id.*  To show that the constitutional
> tort was the legal or proximate cause of the injuries and damages
> claimed, a plaintiff must show that "the injury or damage was a
> reasonably foreseeable consequence of the [officer's] act or
> omission."  *Id.*

*Smith v. City of Oak Hill, Fla.*, 587 F. App'x 524, 527 (11th Cir. 2014).  In

the context of a default judgment, a plaintiff "must meet not only the

burden of proving the fact of damage but also the burden of proving a basis

for determination of the amount of damage.  Although this burden of

proving the amount of damage is not an onerous one, it must still be met."

*Christiansen v. McRay*, 380 F. App'x 862, 863-64 (11th Cir. 2010) (internal

quotation marks and citation omitted).

The Eleventh Circuit has explained that compensatory damages for a § 1983 claim based on excessive force are not limited "to such things as medical expenses, missed work and lost income." *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000). "Indeed, it is by now well settled that compensatory damages may be awarded based on physical pain and suffering caused by a defendant's use of excessive force, apart from any damages based on monetary loss." *Id.* (citing *Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir. 1998)). Punitive damages are available in § 1983 cases, but only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lambert v. Fulton County, Ga.*, 253 F.3d 588, 597 (11th Cir. 2001) (internal quotation marks and citation omitted); *see also Harris v. Augusta, Ga.*, 2010 WL 1286205, at * 7 (S.D. Ga. Mar. 31, 2010) (Hall, J.) (punitive damages "can only be granted upon a showing of the required intent" (citing *Lambert*, 253 F.3d at 597)).

At the hearing, Plaintiff's counsel identified three categories of damages sought: (1) future medical costs, (2) compensatory damages, including pain and suffering at the time of the incident and ongoing physical and mental pain and suffering, and (3) punitive damages.

Plaintiff seeks $50,000.00, respectively, for each category of his claimed damages.   Plaintiff himself was the only witness who testified at the hearing as to his damages, and he submitted several documents in support of that testimony.   Plaintiff also sought attorney's fees, which are discussed in more detail below.

Plaintiff's testimony included a description of his subjective experience of the incident.   He stated the day before the incident in question, there had been an altercation between another inmate in the same dorm and a guard.  He was waiting in line for a meal when defendant Hinton approached the line.   Hinton referred to the prior incident in a threatening manner.   Whitman testified that the statement was directed at the inmates of his dorm, generally, rather than at him specifically.  He approached and patted down several of the other inmates, in what Whitman described as an "aggressive" manner.   Finally, he approached Whitman and engaged in a verbal altercation.   The altercation escalated and resulted in Whitman and Hinton grappling and "tugging at each other."   Hinton swung Whitman against the brick wall of the adjacent building.   Hinton then grabbed Whitman by the throat.   The two fell to the ground.   Whitman was then handcuffed.

Once Whitman was handcuffed and laying on the ground, Hinton kicked him in the face. Hinton then began to "stomp" on Whitman's back, where Whitman testified he had prior injuries, *i.e.* "fusions." Hinton also kicked him in the head. At the same time another office pepper sprayed Whitman. Officers then dragged him across the prison yard, a distance of approximately 250 feet, by his cuffed hands. He was then detained in isolation. The water was turned off in the cell, which required Whitman to use toilet water to wash off the pepper spray. When officers came to remove him from isolation, he feared further retribution, based on prior threatening statements from other guards, and refused to comply. A version of Whitman's witness statement, dated June 5, 2017, was admitted into evidence at the hearing. *See* doc. 24-2 at 2. Whitman was later informed that Hinton had been fired and "escorted off the property."

As to the injuries he suffered in the incident, Whitman testified that he has "anchors" in his left shoulder that were dislodged when officers dragged him by his cuffed hands. He also testified that he had to have surgery on his right shoulder as a result of the dragging. He testified that his right shoulder continues to "go in and out of place," as a result of the injury. An imaging study on his shoulder was conducted, he couldn't

identify the exact procedure, which did not reveal any structural damage. However, he stated that he continued to be unable to lift his arm above his head because it "pops out of place." He returned to the same doctor who treated his original left-shoulder injury, but he is unable to afford further treatment. He did not indicate whether that doctor made any diagnosis, but one doctor said it appeared there were "tissue issues" but no more detailed diagnosis or prognosis was offered. The pain he continues to suffer from the injury impairs his ability to continue his previous employment as a construction worker.[1] He also continues to have limited use of the arm because of the pain.

Whitman testified that, although he didn't immediately appreciate the pain from Hinton's kick to his face, the contusion and abrasion from the kick became more painful. He testified that the kick blackened his eye and caused his jaw to swell to the point he couldn't easily open his mouth. Acute pain from the injury persisted, and was "really painful," for two to

---

[1] Whitman was unable to provide precise details of the extent of his lost employment. He estimated that, because he had to refuse certain jobs because of his physical limitations, he was only able to work "two to three days" per week. He stated that prior to his incarceration, his income as a tile contractor was variable, but he could complete a job worth $2,500.00 to $6,000.00 in three to four days. He now has to work by the hour for $50.00 per hour for twenty-five to thirty hours per week. At that rate, the Court can infer that his income is between $1,250.00 and $1,500.00 per week.

three weeks.   He stated that vision problems he currently suffers, including blurry vision, might be the result of the kick.   He also noted ongoing issues with his facial symmetry, which he speculated might be the result of an undiagnosed fracture resulting from the kick.

Whitman further testified that Hinton had "stomped" on his lower and upper back and kicked him in the ribs.   As a result, his entire back was sore for approximately two weeks.   He also suffered swelling at the location of the "fusions" in his lower back, which he explained were the result of a previous automobile accident.   The swelling and pain occasionally impeded his ability to get out of bed and prevented his bending over.

He also testified that he experienced mental pain and suffering as a result of the incident.   He was detained in insolation at several subsequent prisons, and he was categorized as a "high risk" inmate.   The isolation prevented him from participating in "programs" or recreation, and limited his contact with his family.   He became depressed.   He also became anxious about further assaults by prison guards.   He was prescribed an antidepressant, Elavil.   He took Elavil for the remainder of his incarceration, but was unable to continue after his release for financial

reasons.  He was also sent for a "sleep study," at Augusta State Medical Prison to evaluate sleep problems he developed after the incident.  Finally, he briefly described ongoing "anger issues" he has experienced since his release, and his wife described him as an "emotional wreck."

Firstly, the Court should find that Whitman has sufficiently supported his claim for $50,000.00 in compensatory damages, including both his physical pain and suffering and mental and emotional distress.  Although Whitman received limited medical treatment as a result of the incident, that limitation seems to result more from his financial situation than the fact that he did not suffer serious physical injuries.  His testimony establishes that he suffered several weeks of persistent, if not wholly debilitating, physical pain as a result of his injuries.  Finally, his testimony establishes that he suffered, and likely continues to suffer, from some mental and emotional distress as a result of the incident.

As to the future medical costs, the Court cannot find that he has presented sufficient evidence to justify the damages sought.  Whitman's testimony establishes that he was financially unable to continue to take his antidepressant medication after his release, and he testified he would continue that treatment if his finances permitted.  However, without any

medical diagnosis or testimony, there is simply no evidence of the extent of any surgery or other remedial treatment required.  Moreover, the limited testimony concerning whether any doctor had ever diagnosed any persistent tissue damage resulting from the attack is not sufficient to establish the extent of any future medical costs.  As this Court has explained, even in the context of a default judgment, "[a] court must ensure an award is not a . . . completely speculative amount . . . with no factual basis."  *Key v. Kight*, 2017 WL 915133, at * 3 (S.D. Ga. Mar. 8, 2017) (Baker, M.J.) (internal quotation marks and citation omitted), adopted 2017 WL 1128601 (S.D. Ga. Mar. 24, 2017).  Plaintiff has simply not proven the amount of damages attributable to future medical costs. *See id.* ("Indeed, a plaintiff must show the Court what his damages are, how they are calculated, and where they come from." (internal quotation marks, alterations, and citation omitted)).

The question of punitive damages is the most difficult.  On the one hand, there is virtually no evidence in the record establishing that Hinton's assault on Whitman was willful or malicious, although there is perhaps circumstantial evidence that it was.  On the other hand, a particularly aggressive assault on an already-subdued and handcuffed

inmate is sufficiently egregious that it "transcended mere negligence and constituted callous indifference to [Whitman's] federally guaranteed rights." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986). Because of the egregiousness of kicking and stomping a restrained and prone prisoner, the Court should award punitive damages.

In the absence of more definitive evidence of Hinton's malicious intent, the Court cannot, however, conclude that the requested $50,000.00 is an appropriate amount of punitive damages. In considering the amount of punitive damages in a similar assault on an unarmed prisoner, former Magistrate Judge—now District Judge—Baker noted that the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), mandates that such awards be "narrowly drawn." *Key*, 2017 WL 915133, at * 8 (quoting 18 U.S.C. § 3626(a)(1)(A). He also noted that the defendant in *Key*, as here, had been terminated from his job and no longer worked in a correctional setting. *Id.* He also noted that there was no evidence of other assaults by the defendant. *Id.* He concluded that, thought defendant "should undoubtedly have punitive damages assessed against him, . . . , particularly given that he is no longer in a position to assault those under his charge, . . . $25,000.00 [was] a sufficient deterrent to prevent [that

defendant] from acting in the same or similar manner in the future as he did against Plaintiff." *Id.* The Court should draw the same conclusion from the evidence presented in this case.

In summary, the Court should award Plaintiff a total of $75,000.00 in damages, comprised of $50,000.00 in compensatory damages and $25,000.00 in punitive damages. The Court should, however, award nothing for Plaintiff's future medical costs because Plaintiff has not proven the existence or extent of those costs beyond a purely speculative and hypothetical level.

Attorney's fees in the context of a prisoner § 1983 claim are governed by two statutes. Recovery of fees is authorized by 42 U.S.C. § 1988(b), which provides, in relevant part: "In any action or proceeding to enforce [statutory provisions, including 42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." *Id.* In the prison context, "[w]henever a monetary judgment is awarded . . . , a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the

defendant." 42 U.S.C. § 1997e(d)(2). Moreover, no award of attorney's fees in such cases, "shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). The hourly rate under § 3006A is variable, and stood at $132 between May 5, 2017 and March 22, 2018, $140 between March 23, 2018 and February 14, 2019, and $152 between January 1, 2020 and December 31, 2020.[2] 7A Guide to Judiciary Policy § 230.16.

Counsel's submission to the Court requests $18,867.40 in attorney's fees. *See* doc. 25 at 6. The itemized statement attached to that request, however, shows that the amount claimed includes both attorney's fees and other expenses. *See id.* at 8-11. Since costs may be separately awarded, the Court has distinguished the two in the below analysis and recommended award.

While the Court might agree that counsel's proposed hourly rate of $425 is not unreasonable, it exceeds § 1997e(d)(3)'s threshold. The highest rates allowable under § 1997e(d)(3) are $198 between May 5, 2017 and

---

[2] The itemized list of fees and expenses submitted by counsel does not include any charges for attorney services between February 21, 2019 and August 3, 2020. *See* doc. 25 at 10.

March 22, 2018, $210 between March 23, 2018 and February 14, 2019, and $228 between January 1, 2020 and December 31, 2020.  Based on counsel's itemized statement, he performed 12.13 hours of service between May 5, 2017 and March 22, 2018, 16.53 hours of service between March 23, 2018 and February 14, 2019, and 11.83 hours of service between January 1, 2020 and December 31, 2020.  *See* doc. 25 at 8-10.  The maximum compensable amount for those services are: $2,401.74 for services between May 5, 2017 and March 22, 2018, $3,471.30 for services between March 23, 2018 and February 14, 2019, and $2,697.24 for services between January 1, 2020 and December 31, 2020.  The total amount of compensable attorney's fees, therefore, is $8,570.28.

Accordingly, the Court should award total attorney's fees in the amount of $8,570.28.  Additionally, under § 1997e(d)(3), in the event Plaintiff recovers his award of compensatory damages, or any portion of it, 25% of that recovery shall be applied to satisfy the amount of attorney's fees awarded against defendant.  *See Murphy v. Smith*, ____ U.S. ____, 138 S. Ct. 784, 790 (2018) ("In cases governed by § 1997e(d), we hold that district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees.").

The Court's consideration of the itemized statement also shows items identified as "expenses." *See* doc. 25 at 8-11. $906.15 of the expenses itemized, including the Court's filing fee, postage expenses, and costs associated with effecting service on Hinton, are reasonable in light of the record before the Court and were necessary for the commencement and prosecution of this case. Accordingly, the Court should award counsel costs in the amount of $906.15. The Court notes that several items on the itemized statement cannot be recovered. First, there are two entries of $400 for "filing fees," one in an unspecified court on April 13, 2018 and one in this Court on May 1, 2018. Since the first of those charges is of uncertain provenance, it is not a reasonable cost necessary for the commencement or prosecution of this case. There are also several items identified as "service" provided by individuals other than plaintiff's counsel. Since no information has been provided concerning the reasonableness of those individuals' hourly rates, *see, e.g.,* doc. 25 at 9 (entry dated January 16, 2018), they should also be excluded from the award.

## V. Conclusion

For the foregoing reasons, the Court should enter judgment in favor of plaintiff Whitman against defendant Hinton in the sum of $50,000.00 for compensatory damages for physical pain and suffering, mental and emotional distress, and lost income; $25,000.00 in punitive damages; $8570.28 in attorney's fees, and $906.15 in costs. Pursuant to 42 U.S.C. § 1997e(d)(2), in the event Plaintiff recovers monetary damages from defendant, 25% of that recovery, or any portion of it, shall be applied to satisfy the amount of attorney's fees awarded against this Defendant.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 31st day of August, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA